UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| NIPPON PAPER INDUSTRIES USA CO., LTD., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>GEORGIA-PACIFIC, LLC, a Delaware limited liability company, and GEORGIA-PACIFIC CORPORATION, a Georgia corporation<br><br>Defendants. | NO.<br><br>COMPLAINT<br><br>JURY DEMAND |

Nippon Paper Industries USA Co., Ltd. ("NPI USA") alleges as follows:

## I. INTRODUCTION

1.1. This is a dispute between Nippon Paper Industries, USA Co., Ltd. ("NPI USA") and Georgia-Pacific, LLC and Georgia-Pacific Corporation (collectively, "Georgia-Pacific") regarding Georgia-Pacific' obligations to NPI USA under an asset purchase agreement for a paper mill in Port Angeles, Washington.  When NPI USA purchased the mill in 1988, Georgia-Pacific agreed to retain liability for environmental property-damage rising from pre-closing operations, to indemnify NPI USA for such claims, and to transfer to NPI USA all assets not

COMPLAINT - 1

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

specifically excluded, including insurance assets.  Now, facing liability for 68 years of mill operations that resulted in environmental contamination, GP is attempting to avoid its obligations under the asset purchase agreement.

1.2. In 1987, Georgia-Pacific (through its predecessor in interest) entered into an Asset Purchase Agreement for the sale of the paper mill to NPI USA's predecessor in interest, Daishowa America Co., Ltd.  In early 1988, the Asset Purchase Agreement was amended.  The Asset Purchase Agreement, as amended, is referred to as the "APA."

1.3. The APA provided that all liabilities related to owning and operating the paper mill up to the date of the sale stayed with Georgia-Pacific, except for those liabilities that were fully and explicitly disclosed to NPI USA and that NPI USA agreed to assume.

1.4. The APA's schedule of assumed liabilities states: "None."  Moreover, Georgia-Pacific did not fully disclose the environmental contamination caused by the mill operations before 1988.

1.5. The APA further provided that all assets of the mill would be transferred to NPI USA unless explicitly exempted from the transfer.

1.6. Insurance assets were not exempted.

1.7. The APA also provided that Georgia-Pacific would indemnify NPI USA on written notice of any liabilities.

1.8. Both NPI USA and Georgia Pacific have been named potentially liable persons by the Washington Department of Ecology ("Ecology") for environmental contamination in the sediments of the Western Port Angeles Harbor in Port Angeles, Washington.

COMPLAINT - 2

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1.9. NPI USA provided written notice to Georgia-Pacific of the potential liability it faces because of Georgia Pacific's pre-closing operations and undisclosed activities that resulted in environmental contamination of the Harbor sediments.

1.10. Georgia-Pacific rejected NPI USA's requests for indemnity.

1.11. Georgia-Pacific tendered Ecology's environmental claim to the insurance companies that insured its predecessors in interest at the site and prevented NPI USA from accessing the historic insurance assets of the mill property.

1.12. Georgia-Pacific has taken the untenable position that (i) it is not liable for the historic environmental contamination of the mill property, but (ii) it is entitled to the insurance assets responsive to the historic environmental contamination by the mill operators.

1.13. The parties have been unable to resolve their differences out of court. This lawsuit follows.

## II. PARTIES

2.1. Plaintiff Nippon Paper Industries USA Co., Ltd. is a corporation organized under the laws of Washington with its principal place of business in Longview, Washington.

2.2. NPI USA is formerly known as Daishowa America Co., Ltd.

2.3. Defendant Georgia-Pacific, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Atlanta, Georgia.

2.4. Defendant Georgia-Pacific Corporation is a corporation organized under the laws of Georgia with its principal place of business in Atlanta, Georgia.

2.5. Upon information and belief, no member of Georgia-Pacific, LLC is a Washington State citizen.

2.6. Georgia-Pacific, LLC is successor in interest to Georgia-Pacific Corporation with respect to the APA.

2.7. Georgia-Pacific Corporation was successor in interest to James River Corporation of Nevada.

2.8. James River Corporation of Nevada was successor in interest to Crown Zellerbach Corporation.

2.9. Crown Zellerbach Corporation was successor in interest to Washington Pulp & Paper Company, the original owner and operator of the mill property.

### III.  JURISDICTION AND VENUE

3.1. **Jurisdiction.**  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  This Court also has jurisdiction over NPI USA's claims for declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.  This Court has supplemental jurisdiction over all claims in this action pursuant to 28 U.S.C. § 1367

3.2. **Venue.**  Venue is proper under 28 U.S.C. § 1391(b)(2) because the causes of action arose out of Defendant's conduct in, around, and concerning Port Angeles, Clallam County, Washington.

### IV.  FACTUAL ALLEGATIONS

*The Mill, the Harbor, and the Lagoon*

4.1. Beginning in approximately 1920, Washington Pulp & Paper Company began operating a paper mill in Port Angeles, Washington.

4.2. The Mill office is located at or around 1805 Marine Drive in Port Angeles.

COMPLAINT - 4

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

4.3. The Western Port Angeles Harbor (the "Harbor") is located adjacent to the Mill and to the city of Port Angeles, Washington.

4.4. The Harbor is bordered to the north by the Salish Sea and the Strait of Juan de Fuca and to the south by Washington's Olympic Peninsula.

4.5. On the northwest side of the Harbor, a land spit extends north into the Salish Sea and arcs to the east. This arching land spit, Ediz Hook, creates the Harbor.

4.6. The western corner of the Harbor connects via a narrow channel to a lagoon that is approximately 25 acres (the "Lagoon").

4.7. The Mill property encompasses more than 70 acres. The Lagoon is located within the Mill property.

4.8. Below is a Google Earth image of the Harbor and of the Lagoon, which is in the lower left where Ediz Hook meets the mainland:



COMPLAINT - 5

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*The Corporate Entities*

4.9. The entity that opened the Mill, Washington Pulp & Paper Company, operated the Mill under that name from 1920 until 1928, when Washington Pulp & Paper Company was acquired and changed its name to Crown Zellerbach Corporation ("CZ").

4.10. James River Corporation of Nevada ("James River"), along with its parent corporation James River Corporation of Virginia, acquired CZ, and continued operating the Mill until it was transferred under the APA

4.11. Daishowa America Co., Ltd. ("Daishowa") purchased the Mill from James River through the APA, entered into in late 1987 and amended in early 1988.

4.12. Through an acquisition in 2000, Defendant Georgia-Pacific Corporation became the successor to James River.

4.13. Georgia Pacific, LLC is the successor in interest to Georgia-Pacific Corporation with respect to the APA.

4.14. In 2003, Daishowa changed its name to NPI USA

*Underlying MTCA Claim*

4.15. In 2012, NPI USA and Georgia-Pacific were each named by Ecology as a potentially liable person ("PLP") under the Model Toxics Control Act ("MTCA") for the release of hazardous substances (the "Underlying MTCA Claim").

4.16. The Underlying MTCA Claim concerns the release of hazardous substances in the Harbor and Lagoon (the "Site") and, in particular, contamination of the Harbor and Lagoon's sediments.

//

COMPLAINT - 6

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

4.17. Below is a computer-generated map delineating the Harbor's sediment cleanup unit, which has been divided into three sediment management areas:



4.18. Because NPI USA and Georgia-Pacific are both prior owners and operators of property within the Site, each faces strict liability under MTCA for environmental contamination at the Site.

4.19. Georgia-Pacific has asserted that under the APA, NPI USA assumed Georgia-Pacific's liability for certain pre-closing environmental conditions, and, thus, Georgia Pacific's liability related to the Underlying MTCA Claim.

4.20. According to Georgia-Pacific, NPI USA is responsible for not only NPI USA's own liability related to the Underlying MTCA Claim, but also Georgia-Pacific's.

4.21. Although Georgia-Pacific asserts NPI USA assumed Georgia-Pacific's liability related to the Underlying MTCA Claim, it has simultaneously asserted that it is entitled to the claims and benefits under liability insurance policies issued to James River and its predecessors in interest that potentially cover such liability.

COMPLAINT - 7

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*The Asset Purchase Agreement of 1987, as Amended in 1988.*

4.22. Pursuant to the Asset Purchase Agreement, dated November 17, 1987, as amended by an Amendment No. 1 dated February 16, 1988, Daishowa purchased the Mill from James River.

4.23. A true and correct copy of the APA is attached as **Exhibit A** to this Complaint.

4.24. Section 1.8 sets forth the liabilities NPI USA assumed under the APA.

4.25. In pertinent part, the liabilities assumed by NPI USA are limited to liabilities "specifically enumerated on Schedule 1.8" and "any other liabilities and obligations expressly assumed by Buyer pursuant to the terms of this Agreement."

4.26. Section 1.9 of the APA provides that Daishowa (now NPI USA) has no express or implied assumption of James River's (now Georgia-Pacific's) liabilities.

4.27. Schedule 1.8 expressly states the assumed liabilities are: "None."

4.28. Nowhere does the APA expressly provide that NPI USA is assuming Georgia-Pacific's liability for environmental contamination in and around the Harbor and Lagoon.

4.29. Section 4.23(b) of the APA provides that if an "environmental condition or problem has been fully disclosed on Schedule 2.16, then [NPI USA] agrees to take the Assets subject thereto and assume any liability associated therewith from and after Closing."

4.30. Schedule 2.16 provides:

> **<u>Hazardous Substances and Environmental Matters</u>**. Schedule 2.16 hereto sets forth, to the best of Seller's knowledge (as defined below), *all* of the situations, conditions or actions relating to the Assets or the Business which involve any material environmental concern or compliance issue, including without limitation issues or concerns regarding the handling or disposal of hazardous substances, air pollution or emissions, water pollution or discharge, or solid waste generation, storage or disposal.

COMPLAINT - 8

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

(italics added).

4.31. Schedule 2.16 consists of a short list of environmental conditions specific to the Mill itself, and general information about environmental quality.

4.32. Schedule 2.16 does not fully disclose "all of the situations, conditions or actions relating to the Assets or the Business which involve any material environmental concern or compliance issue."

4.33. Section 1.2 of the APA identifies those assets *not* sold to Daishowa; everything not listed in this "Excluded Assets" schedule was transferred to NPI USA.

4.34. Insurance assets potentially responsive to pre-closing environmental liability claims were not identified as "Excluded Assets."

4.35. The assets acquired by Daishowa include the insurance coverage issued to James River and CZ that would respond to liability for environmental property damage in the Harbor and Lagoon.

4.36. Section 9.1 of the 1988 APA provides that James River "shall indemnify and hold harmless" Daishowa against multiple claims, including:

> …any damages, losses, obligations, liabilities, claims, actions or causes of
> action asserted against, resulting to, imposed upon or incurred by Buyer of
> any of its affiliates and arising from the conduct of the Business by Seller
> or the ownership of the Assets by Seller before the Closing Date,
> including but not limited to product liability claims, claims or liabilities
> with respect to employee matters not assumed by Buyer, claims or
> liabilities relating to environmental problems and hazardous substances
> not assumed by Buyer, tax liabilities, and any and all claims and liabilities
> for failure of Seller to comply with applicable laws; . . .

4.37. Section 9.3 of the 1988 APA requires the indemnified entity (NPI USA) to give notice to the indemnifying entity (Georgia-Pacific) for any assertion of liability by a third party that might give rise to a claim for indemnity.

COMPLAINT - 9

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

4.38. NPI USA has given notice multiple times to Georgia-Pacific of potential claims for indemnification related to the Underlying MTCA Claim.

4.39. Georgia-Pacific has denied any obligation to indemnify NPI USA for any liability related to the Underlying MTCA Claim.

4.40. Georgia-Pacific has not sent any notice letters to NPI USA.

4.41. NPI USA has incurred costs and fees responding to the Underlying MTCA Claim.

4.42. Georgia-Pacific has tendered claims under insurance policies issued to James River, CZ, and Washington Pulp & Paper seeking coverage for the Underlying MTCA Claim.

4.43. Georgia-Pacific is receiving insurance proceeds for the Underlying MTCA Claim from the insurance policies issued to James River, CZ, and Washington Pulp & Paper.

4.44. Insurance coverage for the Underlying MTCA Claim provided by the insurance policies issued to James River, CZ, and Washington Pulp & Paper was transferred to Daishowa under the APA and/or by operation of law.

4.45. The insurers have denied coverage to NPI USA on the basis that they are providing coverage to Georgia-Pacific instead.

*Post-1988 Environmental Stewardship*

4.46. During its ownership and operation of the Mill, James River/Georgia Pacific failed to comply with applicable laws related to pollution prevention.

4.47. When Daishowa took over the Mill in 1988, it implemented strict controls related to pollution prevention.

4.48. Daishowa/NPI USA never discharged wastewater to the Harbor or Lagoon; instead, Daishowa/NPI USA treated its wastewater and discharged the treated effluent to the Strait of Juan de Fuca pursuant to a permit issued under the Clean Water Act.

COMPLAINT - 10

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

4.49. Daishowa/NPI USA's wastewater management system diverted wastewater to the on-site treatment plant, instead of allowing wastewater to leave the Mill property via outfalls to the Harbor and Lagoon.

4.50. Daishowa/NPI USA never disposed of boiler ash or effluent clarifier underflow onsite.

*The Standstill Agreement*

4.51. In 2003, NPI USA and Georgia-Pacific agreed to toll claims against one another for recovery of expenses incurred in response to Ecology's claims by entering into a Standstill Agreement.

4.52. Section 2 of the Standstill Agreement provides that the entire period from the effective date (signing of original agreement) and the expiration or termination of the Agreement will not be counted against any statute of limitations, as follows:

> Preservation of Claims. Any statute of limitation or repose or any other defense based on the passage of time, including laches, applicable to any claim which one Party could assert against the other, that is not already barred by the passage of time as of the effective date of this Agreement, shall be and hereby is tolled as between the Parties effective immediately upon the signing of this Agreement, and the period between the signing of this Agreement and termination or expiration of this Agreement will not be included in computing the time limited by any statute of limitation. If litigation is commenced, neither Party will contend or argue that the passage of time from the effective date of this Agreement until the date this Agreement expires or is terminated affects any of the Parties' claims, defenses, or the relief to which they may be entitled; and each of the Parties will have all other rights and remedies as if either Party had commenced litigation regarding the liabilities associated with Port Angeles Harbor as of the effective date of this Agreement.

4.53. Although the Standstill Agreement, as amended, continued to toll the statute of limitations, NPI USA kept Georgia-Pacific informed of the potentially increasing liability at the Site with subsequent notice letters. There have been several subsequent notice letters from NPI

COMPLAINT - 11

USA to Georgia-Pacific, for example, on April 13, 2007, November 19, 2008, June 3, 2010, April 23, 2019, and February 13, 2020.

4.54. The most recent amendment of the Standstill Agreement was the Tenth Amendment. It expired on May 31, 2021.

4.55. Accordingly, the statute of limitations has not expired on NPI USA's claims.

## CAUSES OF ACTION

## V. DECLARATORY JUDGMENT

5.1. The foregoing paragraphs are re-alleged here.

5.2. An actual and justiciable controversy exists between NPI USA and Georgia-Pacific regarding the assets and liabilities that were, and were not, transferred under the APA and/or by operation of law.

5.3. NPI USA is entitled to declaratory judgment that NPI USA did not assume any of Georgia Pacific's liability arising from the Underlying MTCA Claim.

5.4. NPI USA is entitled to declaratory judgment that the insurance assets of at least James River, Crown Zellerbach, and Washington Pulp & Paper, covering liability for environmental property damage at the Site, transferred to NPI USA under the APA and/or by operation of law.

5.5. NPI USA is entitled to declaratory judgment that Georgia Pacific must indemnify and hold harmless NPI USA for all liability for environmental property damage arising from pre-APA operations at the Mill.

//

//

//

COMPLAINT - 12

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

## VI. BREACH OF CONTRACT: FAILURE TO PROVIDE TRANSFERRED ASSETS

6.1.  The foregoing paragraphs are re-alleged here.

6.2.  The APA constitutes a valid and enforceable contract.

6.3.  The APA did not identify the insurance assets held by any prior owner or operator of the Mill as "Excluded Assets."

6.4.  NPI USA is entitled to the benefit of the insurance policies that were not explicitly identified as "Excluded Assets" under the APA.

6.5.  Georgia-Pacific has prevented NPI USA from obtaining assets of the insurance policies that were not excluded under the APA.

6.6.  As a result of Georgia-Pacific preventing NPI USA from obtaining the assets of the insurance policies, NPI USA has been financially harmed and will continue to be financially harmed.

## VII. BREACH OF CONTRACT: FAILURE TO INDEMNIFY

7.1.  The foregoing paragraphs are re-alleged here.

7.2.  The APA constitutes a valid and enforceable contract.

7.3.  The APA provides that James River shall indemnify and hold harmless Daishowa against "any damages, losses, obligations, liabilities, claims, actions or causes of action asserted against, resulting to, imposed upon or incurred by Buyer of any of its affiliates and arising from the conduct of the Business by Seller or the ownership of the Assets by Seller before the Closing Date, including but not limited to . . . claims or liabilities relating to environmental problems and hazardous substances not assumed by Buyer, . . .and any and all claims and liabilities for failure of Seller to comply with applicable laws; . . .", provided written notice is given of the assertion of liability by a third party.

COMPLAINT - 13

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

7.4. NPI USA provided written notices to James River and Georgia-Pacific seeking indemnity for "claims or liabilities relating to environmental problems and hazardous substances" and "liabilities for failure of Seller to comply with applicable laws."

7.5. Georgia-Pacific rejected the written notices for indemnity provided by Daishowa and NPI USA under the APA.

7.6. As a result of denials for indemnity by Georgia-Pacific, and its predecessors in interest, NPI USA has been financially harmed and will continue to be financially harmed.

## VIII.  NEGLIGENT MISREPRESENTATION

8.1. The foregoing paragraphs are re-alleged here.

8.2. The APA required full disclosure of the nature and extent of the environmental conditions or problems on and around the Mill property.

8.3. Georgia-Pacific's predecessor in interest, James River, provided incomplete and vague information regarding the nature and extent of the environmental conditions or problems on and around the Mill property in their disclosures under the APA.

8.4. Georgia-Pacific's predecessor in interest, James River, knew or should have known it was providing incomplete and vague information regarding the nature and extent of the environmental conditions or problems on and around the Mill property in their disclosures under the APA.

8.5. Georgia-Pacific's predecessor in interest, James River, was negligent in providing incomplete and vague information regarding the nature and extent of the environmental conditions or problems on and around the Mill property when the APA required the seller to "fully disclose" those environmental conditions or problems and required the seller to disclose "all of" "the situations, conditions or actions relating to the Assets or the Business which

COMPLAINT - 14

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

involve any material environmental concern or compliance issue, including without limitation issues or concerns regarding the handling or disposal of hazardous substances, air pollution or emissions, water pollution or discharge, or solid waste generation, storage or disposal."

8.6. NPI USA, and its predecessor in interest Daishowa, reasonably relied on the information provided by James River in the APA as being complete.

8.7. NPI USA has been financially harmed because it relied on the incomplete and vague information James River provided regarding the environmental conditions or problems on and around the Mill property.

## IX. UNJUST ENRICHMENT

9.1. The foregoing paragraphs are re-alleged here.

9.2. Georgia-Pacific has asserted insurance claims and received the benefit of insurance proceeds under policies issued to its predecessors in interest for liability arising from the Underlying MTCA Claim.

9.3. Those insurers are not providing the same or similar insurance benefits to NPI USA because they are providing the benefits to Georgia-Pacific instead.

9.4. Georgia-Pacific has received the benefits of those insurance policies at the expense of NPI USA.

9.5. The circumstances here make it unjust for Georgia-Pacific to retain the benefit of these insurance policies without payment to NPI USA.

## X. PROMISSORY ESTOPPEL

10.1. The foregoing paragraphs are re-alleged here.

10.2. James River promised to fully and adequately disclose the nature and extent of the environmental conditions or problems on and around the Mill property and to disclose the

COMPLAINT - 15

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

company's past practices related to the handling of potentially environmentally damaging substances.

10.3. James River did not fully and adequately disclose the nature and extent of the environmental conditions or problems on and around the Mill property or the company's past practices related to the handling of potentially environmentally damaging substances.

10.4. James River further identified those assets that it was not transferring and stated that all non-excluded assets transferred to NPI USA.

10.5. The insurance assets of James River, CZ, and Washington Pulp & Paper were not excluded from the transfer.

10.6. James River should have reasonably expected Daishowa to rely on those promises.

10.7. Daishowa was justified in relying on the promises James River made.

10.8. These promises were material to Daishowa's decision to purchase the Mill assets.

10.9. Now that NPI USA has been named a potentially liable person at the Site, and now that Georgia-Pacific has asserted that NPI USA assumed Georgia-Pacific's liability for certain pre-closing environmental conditions, injustice can be avoided only by enforcing the promise that the insurance assets of James River, CZ, and Washington Pulp & Paper are transferred to NPI USA.

### XI.  EQUITABLE ESTOPPEL

11.1. The foregoing paragraphs are re-alleged here.

11.2. James River promised it would fully disclose the nature and extent of the environmental conditions or problems on and around the Mill property, including, "all of the situations, conditions or actions relating to the Assets or the Business which involve any material

COMPLAINT - 16

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

environmental concern or compliance issue, including without limitation issues or concerns regarding the handling or disposal of hazardous substances, air pollution or emissions, water pollution or discharge, or solid waste generation, storage or disposal."

11.3. James River further identified those assets it was not transferring, and that all non-excluded assets transferred to Daishowa.

11.4. The insurance assets of James River, CZ, and Washington Pulp & Paper were not excluded from the Mill assets that were transferred.

11.5. Daishowa reasonably relied on the promises made by James River.

11.6. Georgia-Pacific has asserted that NPI USA assumed Georgia Pacific's liability related to the Underlying MTCA claim.

11.7. Georgia-Pacific has further taken the position that while NPI USA assumed Georgia-Pacific's liability, NPI USA is not entitled to the insurance benefits that would respond to such liability.

11.8. Georgia-Pacific's position (that the liability transferred to NPI USA but the insurance benefits do not) contradicts the acts and admissions made by its predecessor in interest, James River.

11.9. NPI USA is being harmed by Georgia-Pacific's position that NPI USA took on the pre-APA liability but is not entitled to the insurance benefits that follow that liability.

11.10. Georgia-Pacific should be estopped from repudiating the transfer of insurance assets.

//

//

//

COMPLAINT - 17

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

**XII. TRANSFER OF INSURANCE ASSETS BY OPERATION OF LAW**

12.1. The foregoing paragraphs are re-alleged here.

12.2. To the extent liability transferred to NPI USA for the actions of James River, CZ, and Washington Pulp & Paper on the Mill property, the rights of James River, CZ, and Washington Pulp & Paper under their respective insurance policies for that liability also transferred to Daishowa via operation of law.

**PRAYER FOR RELIEF**

WHEREFORE, NPI USA asks the Court to enter judgment against Georgia-Pacific as follows:

A. A declaration that NPI USA did not assume Georgia-Pacific's liability arising out of the Underlying MTCA Claim.

B. A declaration that Georgia-Pacific must indemnify NPI USA for all liabilities NPI USA incurs related to pre-APA environmental contamination.

C. A declaration that the insurance claims and benefits under liability insurance policies issued to James River, Crown Zellerbach and/or their predecessors in interest that potentially cover the Underlying MTCA Claim belong to NPI USA, not Georgia-Pacific.

D. An award of damages in an amount to be proved at trial.

E. An award of NPI USA's attorneys' fees and costs as allowed by law or equity.

F. An award of pre- and post-judgment interest as allowed by law or equity.

G. Such other relief as is just, equitable, and proper.

**JURY DEMAND**

NPI USA hereby demands a jury trial on all issues so triable.

DATED this 4th day of October, 2022.

          **GORDON TILDEN THOMAS & CORDELL LLP**
          Attorneys for Plaintiff Nippon Paper

By   s/ *Susannah C. Carr*
      Susannah C. Carr, WSBA #38475
      scarr@gordontilden.com

By   s/ *Kasey D. Huebner*
      Kasey D. Huebner, WSBA #32890
      khuebner@gordontilden.com

By   s/ *John D. Cadagan*
      John D. Cadagan, WSBA #47996
      jcadagan@gordontilden.com

      600 University Street, Suite 2915
      Seattle, Washington 98101
      206.467.6477

COMPLAINT - 19

GORDON TILDEN THOMAS CORDELL | 600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477