UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NIPPON PAPER INDUSTRIES USA CO., LTD,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>GEORGIA PACIFIC, LLC,<br><br>　　　　　　　　　　Defendant. | CASE NO. 3:22-cv-05743-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

This matter comes before the Court on Defendant Georgia-Pacific LLC's Motion to Dismiss First Amended Complaint. Dkt. No. 19. For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss.[1]

### I.　BACKGROUND

This action arises from the 1988 sale of a paper mill in Port Angeles, Washington. Dkt. 17 at 1. Beginning in 1920, the Washington Pulp & Paper Company began operating the paper mill, which is adjacent to the Western Port Angeles Harbor (the "Harbor"). *Id.* at 4. The paper mill

---

[1] Because the matter can be decided on the parties' filings, the Court denies GP's request for oral argument.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 1

encompasses more than 70 acres of property, including an approximately 25-acre lagoon (the "Lagoon"). *Id.* at 4–5. The Washington Pulp & Paper Company operated the paper mill until 1928, when the business was acquired and changed its name to the Crown Zellerbach Corporation ("CZ"). *Id.* at 5. The James River Corporation of Nevada ("James River"), and its parent corporation, the James River Corporation of Virginia, later acquired CZ and continued to operate the paper mill. *Id.* at 6. In November 1987, Daishowa America Co., Ltd. ("Daishowa") purchased the paper mill from James River through an asset purchase agreement ("APA") that was later amended in February 1988. *Id.* Georgia-Pacific, LLC ("GP"), the Defendant in this case, is the successor in interest to the Georgia-Pacific Corporation, which acquired James River in 2000. *Id.* In 2003, Daishowa changed its name to Nippon Paper Industries USA Co., Ltd. ("NPI"), and is now the Plaintiff here. *Id.* at 3–4.

In 2012, the Washington State Department of Ecology ("Department of Ecology") named NPI and GP as potentially liable persons under the Model Toxics Control Act ("MTCA") for the release of hazardous substances into the Harbor and Lagoon. *Id.* at 6. Under the MTCA, each faces strict liability for environmental contamination of the Harbor's and Lagoon's sediments which resulted from operation of the paper mill. *Id.* at 7. GP contends that under the terms of the APA, NPI assumed GP's liability for certain pre-closing environmental conditions. *Id.*

In contrast, NPI alleges that James River failed to disclose at the time of sale certain environmental conditions on the paper mill's property. *Id.* at 8–11. Specifically, NPI alleges that James River misrepresented how it disposed of ash from the paper mill's waste wood-fired boiler and other solid materials. *Id.* at 9. According to the amended complaint, James River landfilled tons of boiler ash on a five-acre site on the property and periodically covered the ash with a "cover crop." *Id.* James River also allegedly used boiler ash to fill the Lagoon and disposed of solid waste (including asbestos-containing materials, scrap metal, and hazardous electrical equipment) in

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 2

1 portions of the Lagoon well below the average low tide land, and on other parts of the property. *Id.* at 10. NPI contends that James River misrepresented its waste-disposal practices to induce NPI to purchase the paper mill. *Id.* NPI also alleges that under the terms of the APA James River transferred to NPI certain liability insurance policies. *Id.* at 11–12. It claims that despite having transferred "intangible property" including the insurance issued to James River, GP tendered a claim for itself, which led to the denial of NPI's claim "on the basis that [the insurers] are providing coverage to" GP. *Id.*

NPI brings eight causes of action against GP: (1) NPI seeks declaratory judgment that (a) it did not assume any of GP's liabilities arising from the Department of Ecology's MTCA claim, (b) James River's, CZ's, and the Washington Pulp & Paper Company's insurance assets transferred to NPI under the APA, and (c) GP must indemnify and hold NPI harmless for its liability under the Department of Ecology's MTCA claim to the extent such liability arises from pre-purchase operations at the paper mill; (2) breach of contract for interference with transferred insurance assets; (3) breach of contract for failure to indemnify; (4) negligent misrepresentation; (5) promissory estoppel; (6) equitable estoppel; (7) transfer of insurance assets by operation of law; and (8) unjust enrichment. *Id.* at 15–20. GP now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of NPI's claims except its breach of contract claim for failure to indemnify. Dkt. No. 19 at 2.

## II.   DISCUSSION

### A.   Jurisdiction

NPI contends that the Court has jurisdiction based on diversity of the parties. Dkt. No. 17 at 4. Federal jurisdiction exists over all civil actions where the matter in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). NPI is a Washington corporation with its principal place of business in Washington, and GP is a Delaware

corporation with its principal place of business in Georgia. Dkt. No. 17 at 3. Because an LLC like GP "is a citizen of every state of which its owners/members are citizens" for diversity purposes, *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006), and GP's corporate disclosure statement did not identify the members of Georgia Pacific Holdings, LLC, the Court ordered GP to file an amended corporate disclosure statement so the Court could ascertain whether complete diversity exists. Dkt. No. 26 at 2. GP filed its Amended Corporate Disclosure Statement, identifying the members of Georgia Pacific Holdings, LLC and indicating that neither the listed entities nor GP are citizens of Washington. Dkt. No. 27. Therefore, complete diversity exists. The amended complaint also alleges that the "amount in controversy exceeds $75,000," and at this point, there are no facts to suggest otherwise. Dkt. No. 17 at 4. Accordingly, the Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

**B.    Rule 12(b)(6) Standard**

Although a complaint challenged under Rule 12(b)(6) need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a claim, that "basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (cleaned up). A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of NPI's allegations and draw all reasonable inferences in its favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. *See Twombly*, 550 U.S. at 570. If the Court

dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Generally, if the Court considers matters outside the complaint, it must convert the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). NPI has attached as Exhibit A to its amended complaint the Asset Purchase Agreement ("APA") at issue in this action. Dkt. No. 17 at 23–194. GP "does not dispute the authenticity" of the document, Dkt. No. 19 at 3, and the Court will consider the agreement without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). The parties agree that the APA is governed by Washington law. Dkt. No. 17 at 88 ("This Agreement shall be construed and enforced in accordance with the internal laws of the State of Washington, without regard to its conflict of law principles.").

**C.     Breach of Contract for Transferred Insurance Assets and Related Declaratory Judgment Claim**

NPI alleges that the APA constitutes a valid and enforceable contract in which James River transferred its insurance assets to NPI, and that GP has breached the contract by preventing NPI from obtaining coverage under the insurance policies. Dkt. No. 17 at 11–12, 15–16. GP contends that the Court must dismiss NPI's breach of contract claim for GP's alleged failure to provide transferred insurance assets, in addition to the portion of NPI's declaratory judgment claim which seeks a declaration that James River's, CZ's, and the Washington Pulp & Paper Company's insurance assets transferred to NPI under the APA. *See* Dkt. No. 19 at 6–8. With respect to these claims, GP does not challenge the sufficiency of the facts NPI pleaded in its amended complaint; rather, GP argues that these claims are barred by the applicable statute of limitations.

In Washington, actions based on written contracts are subject to a six-year statute of limitations. RCW 4.16.040(1). "Statutes of limitations do not begin to run until a cause of action

accrues." *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 146 P.3d 423, 428 (Wash. 2006) (citing RCW 4.16.005). Typically, a cause of action accrues "when the party has the right to apply to a court for relief." *Id.* The Washington Supreme Court has "consistently held" that the accrual of an action for breach of a contract "occurs on breach," not discovery of the breach. *Id.* at 428; *see also Karpstein v. Allianz Life Ins. Co. of N. Am.*, No. C15-966-RSL, 2016 WL 6432535, at *3 (W.D. Wash. Oct. 31, 2016) (explaining that "the rule in Washington" for breach of contract claims "is that the statute of limitations begins to run on the date of breach, not the date of discovery").

Here, GP argues that to the extent James River was required under the terms of the APA to transfer its liability insurance assets to NPI as NPI alleges, NPI's cause of action for breach of contract accrued on the APA's specified closing date, February 16, 1988, when James River failed to transfer the insurance assets. *See* Dkt. No. 19 at 6. Thus, GP contends that NPI had until February 16, 1994, to bring this claim. Although the parties executed a "standstill agreement" in 2003 to toll claims against each other for recovery of expenses incurred in response to the Department of Ecology's MTCA claim, that agreement applies only to claims that are "not already barred by the passage of time as of the effective date of [the standstill agreement.]" Dkt. No. 17 at 14 (quoting the standstill agreement). GP asserts that the standstill agreement provides NPI no relief because NPI's claim was barred in 1994, nearly a decade before the parties executed the standstill agreement. Because the "statute of limitations is an affirmative defense," GP carries the burden to prove the breach occurred outside the limitations period. *Rivas v. Overlake Hosp. Med. Ctr.*, 189 P.3d 753, 755 (Wash. 2008).

NPI argues that GP relies on the incorrect premise that GP breached the contract in 1988 by failing to transfer the insurance assets when the parties closed the APA. Dkt. No. 24 at 5. Instead, NPI contends that the insurance assets were "intangible property" that did transfer upon closing, and GP's breach occurred in or around 2012, when GP sought coverage under the

insurance policies notwithstanding the transfer. *Id.* at 5–7 (arguing the insurance assets "transferred to NPI's predecessor at Closing in 1988" and the breach "occurred decades after the parties executed the APA and years after the parties entered the 2003 Standstill Agreement"); Dkt. 17 at 11–12.

At this stage, the Court must take NPI's factual allegations as true, and NPI has plausibly alleged that the "insurance assets" were "intangible property" that "was transferred to NPI USA" upon closing of the APA, and GP breached the APA years later when it "tendered claims to insurers who issued policies to James River, CZ, and Washington Pulp and Paper." *Id.* at 11–12. Accordingly, GP cannot meet its burden on a Rule 12(b)(6) motion to prove that the alleged breach of contract occurred outside the statute of limitations, and the Court denies its motion to dismiss this claim. GP's motion to dismiss the portion of NPI's declaratory judgment claim which seeks a declaration that James River's, CZ's, and the Washington Pulp & Paper Company's insurance assets transferred to NPI under the APA is similarly denied.

**D.     Negligent Misrepresentation**

NPI alleges that James River provided inaccurate and incomplete information, on which NPI reasonably relied, regarding the extent of environmental conditions and compliance issues on the paper mill's property. Dkt. No. 17 at 17. NPI contends that because James River buried waste well below the low tide line and planted cover crops over landfilled areas, the nature and extent of environmental conditions on the property were not easily discoverable. *Id.* at 10.

To prevail on a claim for negligent misrepresentation, NPI must prove (i) "the defendant supplied information for the guidance of another in his or her business transactions," (ii) "the information was false," (iii) "the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her business transactions," (iv) "the defendant was negligent in obtaining or communicating the false information," (v) "the plaintiff relied on the false

information," (vi) "the plaintiff's reliance was reasonable," and (vii) "the false information proximately caused the plaintiff damages." *Repin v. State*, 392 P.3d 1174, 1191 (Wash. Ct. App. 2017) (citing *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007)).[2] GP argues that NPI's negligent misrepresentation claim should be dismissed because it is barred by (1) the applicable statute of limitations, and (2) Washington's independent duty doctrine.

1. Statute of Limitations

GP contends that this claim is barred under the applicable three-year statute of limitations for tort claims of negligent misrepresentation. RCW 4.16.080. As the Washington Court of Appeals has recognized, "the applicable statute of limitation and principles of accrual are the same whether negligent misrepresentation or fraudulent misrepresentations are at issue[.]" *First Maryland Leasecorp. v. Rothstein*, 864 P.2d 17, 22 (Wash. Ct. App. 1993). Under RCW 4.16.080(4), "a cause of action for fraud does not accrue until the aggrieved party discovers the facts constituting the fraud." *Hudson v. Condon*, 6 P.3d 615, 620 (Wash. Ct. App. 2000). Courts infer actual knowledge of fraud "if the aggrieved party, through due diligence, could have discovered it," and the statute of limitations for a plaintiff's claim "commences when the aggrieved party discovers, or should have discovered, the fact of fraud and sustains some damage as a consequence." *Id.*; *see also Sabey v. Howard Johnson & Co.*, 5 P.3d 730, 739 (Wash. Ct. App. 2000) ("In the case of negligent misrepresentation, the plaintiff must also have discovered (or, in the exercise of due diligence, should have discovered) the misrepresentation.").

---

[2] GP argues that this claim sounds in fraud and is therefore subject to Rule 9(b)'s heightened pleading standard. Despite alleging that James River failed to fully disclose its waste disposal practices to "induce" NPI to purchase the paper mill, *see* Dkt. No. 17 at 10, NPI represents to the Court that it does not allege fraud, *see* Dkt. No. 24 at 11. Regardless, the amended complaint satisfies Rule 9(b)'s heightened pleading standard, which requires that averments of fraud "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Here, the amended complaint identifies with specificity James River's allegedly inaccurate representations regarding its waste disposal practices. The amended complaint also explains why the representations are inaccurate and James River's purpose for including the representations in the APA. *See* Dkt. No. 17 at 8–11.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 8

GP argues that James River's disclosures in the APA regarding boiler ash and waste disposal are consistent with the alleged misrepresentations described in NPI's amended complaint. Dkt. No. 19 at 11. In the APA, James River disclosed that "[f]or several years, ash from our waste wood fired boiler was deposited on the plant site along the southeastern edge of the log pond," and that "[f]or many years, general waste materials and garbage [including waste paper, folding cartons, metal containers, construction debris, scrap lumber, wood pallets and plastics] have been trucked to a public landfill operated by the City of Port Angeles." Dkt. No. 17 at 130–32. According to GP, even if there was inconsistency between the actual conditions and what it disclosed in Schedule 2.16 of the APA, NPI should have discovered the environmental contamination because the APA authorized a 45-day environmental audit period "for the purpose of determining whether any environmental contamination or compliance problems exist on, above, under, or with respect to such property, or any other property used in connection with the Business such as landfills or waste disposal sites" that could result in liability to either party. *Id.* at 67. Accordingly, GP contends that the applicable three-year statute of limitations began to run when NPI "could have and should have discovered [the contamination] during the APA's liberal environmental audit period" through pre-closing due diligence. Dkt. No. 19 at 11.

The Court, however, must accept as true the factual allegations in NPI's complaint, *Usher*, 828 F.2d at 561, and NPI has alleged that James River landfilled tons of boiler ash (sometimes on a daily basis) on a five-acre site on the property and covered the ash with a cover crop, making it difficult to discover. Dkt. No. 17 at 9. James River also allegedly disposed of potentially hazardous solid waste materials in portions of the Lagoon well below the average low tide line, meaning that the true extent of the environmental contamination may not have been discoverable in the exercise of due diligence. *See id.* at 10. Accepting NPI's factual allegations as true, the Court cannot resolve this statute of limitations issue when deciding a Rule 12(b)(6) motion to dismiss.

2. Independent Duty Doctrine

GP also contends that Washington's "independent duty doctrine," formerly known as the economic loss rule, bars NPI's negligent misrepresentation claim. In Washington, the judicially-created independent duty doctrine "bars recovery in tort for economic losses suffered by parties to a contract unless the breaching party owed a duty in tort independent of the contract." *Pointe at Westport Harbor Homeowners' Ass'n v. Eng'rs Nw., Inc.*, 376 P.3d 1158, 1162 (Wash. Ct. App. 2016). Essentially, the doctrine seeks to delineate between contract and tort claims. The doctrine is limited, and the Washington Supreme Court has "directed lower courts not to apply the doctrine to tort remedies 'unless and until [the Washington Supreme Court] has, based upon considerations of common sense, justice, policy and precedent, decided otherwise.'" *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 969–70 (Wash. 2012) (quoting *Eastwood v. Horse Harbor Found.*, 241 P.3d 1256, 1276 (Wash. 2010) (Chambers, J., concurring)). To date, the Washington Supreme Court has "applied the doctrine to a narrow class of cases, primarily limiting its application to claims arising out of construction on real property and real property sales." *Id.* at 969.

NPI contends that the independent duty doctrine does not apply in this action because the dispute does not fall into the limited class of cases described above. Dkt. No. 24 at 14–15. NPI, however, fails to explain how the Court should categorize the transaction at issue in this case. Although the APA describes the sale of assets other than real property, such as intellectual property rights, contracts, and licenses, the transaction also involves the sale of fee-owned real property, Dkt. No. 17 at 30, and "Washington law has long endorsed the proposition that absent extraordinary circumstances, buyers and sellers allocate risk through contracts and, accordingly, aggrieved parties to real estate contracts must seek remedies sounding in contract, not tort," *Austin v. Ettl*, 286 P.3d 85, 88 n.6 (Wash. Ct. App. 2012).

1    Nonetheless, the Washington Supreme Court has recognized that a duty to avoid negligent
2 misrepresentation "might arise independently of the contract" if "one party, through
3 misrepresentations, induces another to enter into a contractual relationship." *Donatelli v. D.R.*
4 *Strong Consulting Eng'rs, Inc.*, 312 P.3d 620, 626 (Wash. 2013). At this stage of the proceeding,
5 the Court must accept NPI's well-pleaded factual allegations as true, and NPI has alleged that
6 James River made certain misrepresentations to induce NPI to enter into the contractual agreement,
7 which might give rise to an independent tort duty to avoid negligent misrepresentations. *See id*.
8 Accordingly, under the current procedural posture, the Court denies the motion to dismiss as it
9 relates to NPI's negligent misrepresentation claim.

10   **E.   Unjust Enrichment**

11   To prevail on a claim for unjust enrichment, a plaintiff must establish three elements:
12 (i) "one party must have conferred a benefit to the other," (ii) "the party receiving the benefit must
13 have knowledge of that benefit," and (iii) "the party receiving the benefit must accept or retain the
14 benefit under circumstances that make it inequitable for the receiving party to retain the benefit
15 without paying its value." *Cox v. O'Brien*, 206 P.3d 682, 688 (Wash. Ct. App. 2009). NPI alleges
16 that GP has filed claims under James River's, CZ's, and the Washington Pulp & Paper Company's
17 insurance policies for liability arising from the Department of Ecology's MTCA claim. Dkt. No.
18 17 at 20. NPI contends that GP has received the benefits of the insurance policies at NPI's expense
19 because the unnamed insurers have declined to provide the same or similar insurance benefits to
20 NPI. *Id.* According to NPI, the insurers have declined to provide it insurance benefits because they
21 are already providing coverage to GP instead. *Id.*

22   "In Washington, a plaintiff who is a party to a 'valid express contract is bound by the
23 provisions of that contract' and may not bring a claim for unjust enrichment for issues arising
24 under the contract's subject matter." *Polygon Nw. Co. LLC v. Louisiana-Pac. Corp.*, No. C11-620-

MJP, 2012 WL 2504873, at *6 (W.D. Wash. June 28, 2012) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943)); *see also Austin*, 286 P.3d at 91 ("Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it.") (quoting *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008)). In this case, NPI does not contest the validity of the APA and cannot dispute that it is suing GP for breach of the contract. A claim for unjust enrichment is not available under these circumstances. The Court grants GP's motion to dismiss as it relates to NPI's unjust enrichment claim and the claim is dismissed with prejudice because leave to amend would be futile.

### F. Promissory Estoppel

The doctrine of promissory estoppel serves to enforce "otherwise unenforceable promises which are not supported by consideration." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 616 P.2d 644, 647 (Wash. 1980). To establish a claim for promissory estoppel, a plaintiff must prove "(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 442 (Wash. 1994) (quoting *Klinke*, 616 P.2d at 646 n.2). Here, NPI alleges that James River promised to fully disclose the nature and extent of the material environmental conditions on the paper mill property and its past practices regarding the disposal of potentially harmful waste. Dkt. No. 17 at 18. NPI also alleges that James River identified the assets it was transferring and promised that all non-excluded assets, such as insurance assets, transferred to NPI. *Id.* NPI contends that James River's promises were material to its decision to purchase the paper mill and that it was justified in relying on these promises. *Id.*

GP argues that NPI's claim for promissory estoppel must be dismissed because James River's alleged promises are contained in, and governed by, the APA. Indeed, under Washington

law, "promissory estoppel does not apply where a contract governs." *Pierce v. Bill & Melinda Gates Found.*, 475 P.3d 1011, 1019 (Wash. Ct. App. 2020) (quoting *Spectrum Glass Co., Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 119 P.3d 854, 861 (Wash. Ct. App. 2005)). A plaintiff, however, may plead its claims in the alternative, *see* Fed. R. Civ. P. 8(d)(2), and "set forth inconsistent legal theories in its pleadings[.]" *Scott v. Carr*, No. C20-236-RSM, 2020 WL 6381812, at *4 (W.D. Wash. Oct. 30, 2020). Nevertheless, "[i]t may be proper to dismiss a promissory estoppel claim when 'an undisputedly valid and enforceable written contract governs the same subject matter.'" *Neravetla v. Virginia Mason Med. Ctr.*, No. C13-1501-JCC, 2014 WL 12787979, at *7 (W.D. Wash. Feb. 18, 2014) (quoting *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009)).

In this case, GP concedes that "a written binding contract exists," and the only alleged promises that NPI has identified in its amended complaint are contained in that contract. Dkt. No. 28 at 4; *compare* Dkt. No. 17 at 18 ("James River promised to fully and adequately disclose the nature and extent of the material environmental conditions and compliance issues on and around the Mill property and to disclose the company's past practices related to the handling of potentially environmentally damaging substances.") *with id.* at 47 ("Schedule 2.16 hereto sets forth, to the best of Seller's knowledge (as defined below), all of the situations, conditions or actions relating to the Assets or the Business which involve any material environmental concern or compliance issue"); *compare id.* at 18 ("James River further identified those assets that it was not transferring and stated that all non-excluded assets transferred to [NPI].") *with id.* at 32 (transferring "such other tangible and intangible property owned by Seller which is used principally in the Business, except for those Excluded Assets specifically described in Section 1.2."). Further, the APA provides that it constitutes the entire agreement between the parties "and supersedes all other prior agreements and understandings, both written and oral[.]" *Id.* at 87.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 13

Because the only alleged promises at issue in this action are contained in the APA (which both parties agree is binding and enforceable), the Court grants GP's motion to dismiss as it relates to NPI's promissory estoppel claim and the claim is dismissed with prejudice.

G.   **Equitable Estoppel**

In its amended complaint, NPI alleges that GP should be estopped from repudiating the transfer of insurance assets. Dkt. No. 17 at 19. "Equitable estoppel is based on the notion that 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'" *Lybbert v. Grant Cnty.*, 1 P.3d 1124, 1127 (Wash. 2000) (quoting *Kramarevcky v. Dep't of Soc. & Health Servs.*, 863 P.2d 535, 538 (Wash. 1993)). Equitable estoppel, however, is "available only as a 'shield' or a defense" and cannot be "used as a 'sword' in a cause of action for damages." *Klinke*, 616 P.2d at 646. NPI contends that its equitable estoppel claim is a "defense to a defense" because it seeks to enforce the contract and requests a narrow ruling that GP is estopped from basing its defenses on positions that are contrary to the underlying contract. This claim is not valid under Washington law, *see*, *e.g.*, *BKWSPOKANE, LLC v. FDIC*, No. 12-CV-0521-TOR, 2013 WL 312389, at *6 (E.D. Wash. Jan 25, 2013), and the Court grants GP's motion to dismiss as it relates to NPI's equitable estoppel claim. The claim is dismissed with prejudice because amendment is futile.

H.   **Transfer of Insurance Assets by Operation of Law**

NPI alleges that to the extent it assumed liability under the APA for environmental damage resulting from James River's, CZ's, and the Washington Pulp & Paper Company's operations of the paper mill, those entities' insurance policies (which allegedly cover liability for environmental damage to the Harbor and Lagoon) transferred to NPI via operation of law. Dkt. No. 17 at 20. NPI contends that it tendered the Department of Ecology's MTCA claim against it to certain of James

River's insurers, but those insurers denied coverage to NPI because they are already providing coverage to GP. *Id.* at 12. GP argues that NPI has sued the wrong entity because it cannot remedy NPI's alleged injury, i.e., the insurers' denial of coverage. Dkt. No. 19 at 21.

In support of its argument that certain insurance policies transferred by operation of law, NPI cites three cases: *N. Ins. Co. of New York v. Allied Mut. Ins. Co.*, 955 F.2d 1353 (9th Cir. 1992), *B.S.B. Diversified Co. v. Am. Motorists Ins. Co.*, 947 F. Supp. 1476 (W.D. Wash. 1996), and *Unigard Ins. Co. v. Leven*, 983 P.2d 1155 (Wash. Ct. App. 1999). Importantly, all three of these cases involve claims brought against the specific insurers that denied coverage, and NPI has failed in this case to sufficiently explain how its claim is cognizable against GP. NPI does not dispute that GP lacks the authority to require independent insurers to provide coverage to NPI under the insurance policies. If NPI contends that certain insurers wrongfully denied it coverage, then NPI must bring claims against those entities. The Court grants GP's motion to dismiss as it relates to NPI's claim for transfer of insurance assets by operation of law, and the claim is dismissed with prejudice because is not cognizable against GP.

I. **Declaratory Judgment**

NPI also seeks declaratory judgment that (i) it did not assume any of GP's liabilities arising from the Department of Ecology's MTCA claim, and (ii) GP must indemnify and hold NPI harmless for its liability under the Department of Ecology's MTCA claim to the extent such liability arises from pre-purchase operations at the paper mill. Dkt. No. 17 at 15. GP argues that the Court must dismiss these remaining requests for declaratory judgment under Rule 8(a), which requires a party to plead "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Here, GP contends that NPI has engaged in improper "puzzle pleading." *See* Dkt. No. 19 at 19–20. Puzzle pleading does not satisfy Rule 8(a) because it places "the burden on the reader to sort out the statements and match them with the

corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiffs' claims." *Dresner v. Silverback Therapeutics, Inc.*, No. C21-1499-MJP, 2022 WL 16716165, at *8 (W.D. Wash. Nov. 4, 2022) (quoting *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1988)).

NPI's amended complaint, however, is not difficult to follow and includes multiple sections describing the Department of Ecology's MTCA claim, the parties' assumption of liabilities, and GP's alleged failure to indemnify. *See* Dkt. No. 17 at 6–8, 12–13, 15. NPI's amended complaint also identifies the specific APA provisions on which it bases its request for declaratory relief. *See id.* Although GP disputes NPI's interpretation of the APA and the merits of its request for declaratory judgment, *see* Dkt. No. 19 at 19–20, GP's disagreement does not mean that the cause of action fails to conform to Rule 8(a)'s pleading requirements. The Court therefore denies GP's motion to dismiss as it relates to NPI's remaining requests for declaratory relief.

### III.  CONCLUSION

For the reasons stated herein, the Court GRANTS IN PART AND DENIES IN PART GP's motion, Dkt. No. 19, and DISMISSES the following claims with prejudice: (1) unjust enrichment; (2) promissory estoppel; (3) equitable estoppel; and (4) transfer of insurance assets by operation of law. The Court DENIES in part GP's motion to dismiss as it relates to NPI's claims for breach of contract based on the interference with transferred insurance assets, negligent misrepresentation, and declaratory judgment.

Dated this 6th day of September, 2023.

Tiffany M. Cartwright
United States District Court Judge